1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   Quiana Lei Porter,                        No. 2:20-cv-01554-KJM-DB

12                  Plaintiff,                  ORDER

13         v.

14   Yuba City Police Officers Hansen, Jurado,
     Jensen, Escheman, *et al.*,
15

16                  Defendants.

17         Plaintiff Quiana Lei Porter brings this action under 42 U.S.C. § 1983 against several Yuba

18   City Police Officers.  Defendants move for summary judgment and Porter moves to amend her

19   complaint.  **The court denies the motion for summary judgment and grants the motion to**

20   **amend**.

21   **I.      BACKGROUND**

22         On July 31, 2018, Yuba City police officers arrested Porter outside her brother's home.

23   Statement of Disputed Facts (SDF) ¶ 1, ECF No. 41-3.  She recorded some of the arrest on her

24   phone.[1]  The video shows six officers.  Williams Decl. Ex. B (video footage), Not. of Lodging,

---

[1] Porter maintains she did not film anything "relevant to this case" because the video does not show the alleged assault Porter endured at the hands of the defendant officers.  SDF ¶ 11. However, the video is relevant because it shows that before she filed this action, Porter knew the names of the officers.  This is pertinent to the court's analysis regarding the timeliness of Porter's claims under relevant federal and California law as discussed below.

1

1    ECF No. 35-5.  Throughout the video, Porter claims the officers are grabbing her.  She also asks

2    them their names and badge numbers.  The officers named as defendants—Hansen, Jurado,[2]

3    Jensen, and Escheman—gave their names in response.  *Id*.; SDF ¶ 11.  Porter only recorded a

4    minute and twenty-four seconds of the arrest before one of the officers approached her and said

5    she was under arrest.  The phone then recorded a few more seconds of audio without capturing

6    video.

7         A little more than two years later, on August 3, 2020, Porter filed a pro se complaint in

8    this court against the Yuba City Police Department and fifty Doe Defendants.  SUD. ¶ 2.  She

9    alleged the unnamed officers "grabb[ed]," "pummeled" and "threw her to the ground" before

10   handcuffing her while her breast was exposed until a "male officer grabbed her breast[ ] and put it

11   back into her shirt."  Compl. at 2, ECF No. 1; Porter Decl. ¶¶ 14–16, ECF No. 39-2.  She alleged

12   incorrectly that her arrest had taken place on August 1, 2018.  Compl. at 2.  She did not identify

13   any officers by name.

14        Porter then retained counsel and filed an amended complaint, but again named no

15   individual officers.  SDF ¶ 4; First Am. Compl., ECF No. 7.  After the case had been pending for

16   almost a year, she filed the operative second amended complaint.  SDF ¶ 7; Second Am. Compl.

17   (SAC) ¶ 12, ECF No. 19.  This complaint names, for the first time, defendants Hansen, Jurado,

18   Jenson and Escheman.  *See generally* SAC.  Porter brings three claims under 42 U.S.C. § 1983:

19   1) excessive force in violation of the Fourth Amendment; 2) false arrest in violation of the Fourth

20   Amendment; and 3) unlawful detention in violation of the Fourteenth Amendment.  *Id.*

21        Defendants moved to dismiss, arguing among other things that Porter's claims are barred

22   by the statute of limitations.  Mot. to Dismiss at 4–5, ECF No. 20.  The court denied the motion

23   because, based on the face of the complaint and existing record, it appeared Porter had included

24   Doe defendants as placeholders for the officers involved in her arrest, suggesting she did not

25   know the officers' names at the time.  Prev. Order (Nov. 4, 2021) at 4, ECF No. 28.  Thus, the

---

[2] The court acknowledges that in its prior order directing the Clerk of Court to correct the spelling of two defendants names it provided the improper spelling for defendant Hurardo, whose name should be spelled Jurado.

1    court found the operative complaint related back to Porter's original filing and her claims were

2    timely.  *Id.*

3        The parties then completed initial discovery disclosures.  SDF ¶ 10.  Based on the

4    evidence received, the parties each filed a motion.  For her part, Porter moves to amend her

5    complaint to correct some factual allegations and add a First Amendment retaliation claim.  Mot.

6    to Am., ECF No. 33.  The motion is fully briefed, and the court submitted it on the papers.  Am.

7    Opp'n, ECF No. 34; Am. Reply at ECF No. 38; Min. Order, ECF No. 36.  For their part, the

8    defendants move for summary judgment.  Mem. for Summary J. (MSJ); ECF No. 35-1; MSJ

9    Opp'n, ECF No. 41; MSJ Reply, ECF No. 42.  The court held a hearing on the defense motion on

10   March 25, 2022.  Plaintiff's counsel Stanley Goff and defendants' counsel Danielle Williams

11   were present.  The court first considers defendants' motion for summary judgment.

12   **II.    SUMMARY JUDGMENT**

13       **A.    Legal Standard**

14       A court may grant summary judgment "if . . . there is no genuine dispute as to any

15   material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

16   The moving party bears the initial burden of showing the district court "there is an absence of

17   evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325

18   (1986).  The burden then shifts to the nonmoving party, which "must establish that there is a

19   genuine issue of material fact . . . ."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

20   574, 585 (1986).  In deciding a motion for summary judgment, the court draws all inferences and

21   views all evidence in the light most favorable to the nonmoving party.  *Id.* at 587–88.

22       **B.    Analysis**

23       First, the defendants seek summary judgment on their statute of limitations defense.  MSJ

24   at 3.  To prevail based on an affirmative defense at summary judgment, defendants must prove

25   the defense in question is "beyond controversy."  *S. Cal. Gas Co. v. City of Santa Ana*,

26   336 F.3d 885, 888 (9th Cir. 2003) (citation omitted).  Specifically, they must prove "no

27   reasonable jury could fail to find that the defense had been established."  *Snell v. Bell Helicopter*

28   *Textron, Inc.*, 107 F.3d 744, 746 (9th Cir. 1997).  Conversely, a plaintiff "can defeat summary

1  judgment by demonstrating the evidence, taken as a whole, could lead a rational trier of fact to

2  find in its favor." *S. Cal. Gas*, 336 F.3d at 888.

3        For § 1983 claims, such as those asserted here, federal courts "apply the forum state's

4  statute of limitations for personal injury actions, along with the forum state's law regarding

5  tolling," so long as the law is not "inconsistent with federal law." *Butler v. Nat'l Cmty.*

6  *Renaissance of California*, 766 F.3d 1191, 1198 (9th Cir. 2014).  Here, the relevant statute of

7  limitations is two years.  *See id.*; Cal. Civ. Proc. Code § 335.1.  Porter has always alleged her

8  arrest took place on August 1, 2018, Compl. at 2; SAC ¶ 9, which would set the end of the

9  statutory filing period as August 3, 2020, the day she filed this action.  However, it is now

10  undisputed that Porter was actually arrested on July 31, 2018, SDF ¶ 1, meaning the statutory

11  period ended three days before she filed her complaint.  However, the court declines to grant

12  summary judgment on this ground, as explained below.

13        Before the limitations period expired, the Judicial Council of California promulgated

14  emergency rules in response to the COVID-19 pandemic.  *See* Judicial Council of Cal.,

15  Emergency Rules Related to COVID-19.[3]  Under emergency rule 9, "[n]otwithstanding any other

16  law, the statutes of limitations and repose for civil causes of action that exceed 180 days are tolled

17  from April 6, 2020, until October 1, 2020." *Id.*  "By its terms, 'Emergency rule 9 is intended to

18  apply broadly to toll any statute of limitations on the filing of a pleading in court asserting a civil

19  cause of action.'" *Palacios v. Interstate Hotels & Resorts Inc.*, No. 21-5799, 2021 WL 4061730,

20  at *3 (N.D. Cal. Sept. 7, 2021) (quoting Judicial Council of Cal., Advisory Comm. Comment).  In

21  *Palacios*, for example, the court relied on this rule to toll the plaintiff's Fair Employment and

22  Housing claims.  *Id*.  Defendants do not dispute that the emergency rule applies to Porter's

23  claims.  Nor do they claim to have suffered any prejudice as a result of the three days' delay

24  between the expiration of the limitations period and the day plaintiff filed suit.  The court finds

25  /////

---

[3] *See* https://www.courts.ca.gov/documents/appendix-i.pdf (accessed April 11, 2022). The court takes judicial notice of these emergency rules under Federal Rule of Evidence 201.  *See Arizona Libertarian Party v. Reagan*, 798 F.3d 723, 727 n.3 (9th Cir. 2015).

the statute of limitations for Porter's § 1983 claim was tolled from April 6, 2020 until October 1, 2020.  Her original complaint was timely.

This conclusion does not resolve the defendants' motion entirely.  The defendants also argue Porter's claims against the individual officers are untimely because she did not name any of them in her original complaint; rather, as noted, she first identified them in her second amended complaint, which she filed after the extended emergency limitations period had expired.  MSJ at 3.  This is the same argument the defendants raised in their motion to dismiss, which the court denied.  Mot. to Dismiss at 4–5.

Federal Rule of Civil Procedure 15 governs the resolution of this question.  Under Rule 15, an amendment relates back to a previous pleading if it would also do so "under the state law that provides the applicable statute of limitations, . . . even if the amendment would not otherwise relate back under the federal rules."  *Butler*, 766 F.3d at 1200 (citation omitted).  The general rule under California law "is that an amended complaint that adds a new defendant does not relate back to the date of filing the original complaint."  *Woo v. Superior Ct.*, 75 Cal. App. 4th 169, 176 (1999).  However, an exception exists under California's Code of Civil Procedure section 474.  Under section 474, an amendment may relate back if it is "simply correct[ing] a misnomer by which an 'old' defendant was sued."  *Shidler v. Cty. of San Bernardino*, No. 19-503, 2020 WL 10224752, at *3 (C.D. Cal. July 28, 2020) (citing *Hawkins v. Pac. Coast Bldg. Prods., Inc.*, 124 Cal. App. 4th 1497, 1503 (2004)).  The exception encompasses cases in which an amendment substitutes "a new defendant for a fictitious Doe defendant."  *Woo*, 75 Cal. App. 4th at 176.  It applies either if the plaintiff was "genuinely ignorant of the defendant's identity at the time the original complaint was filed."  *Shidler*, 2020 WL 10224752, at *3 (citing *Butler*, 766 F.3d at 1202), or "was initially unaware of [the defendant's] true relationship to the injuries upon which the action was based."  *Kurz v. Superior Ct.*, No. H035548, 2011 WL 288460, at *7 (Cal. Ct. App. Jan. 31, 2011) (unpublished).  Under the first test, if the "ignorance requirement of section 474 is not met, a new defendant may not be added after the statute of limitations has expired even if the new defendant cannot establish prejudice resulting from the delay."  *Woo*, 75 Cal. App. 4th at 177 (citation omitted).

1    When the court previously confronted this question, "[t]he record show[ed] [Porter] was

2    ignorant of the officers' names," prior to her retention of counsel.  Prev. Order (Nov. 4, 2021)

3    at 4.  Now, however, it is undisputed the four officers all told Porter their names at the time of her

4    arrest, and she recorded them doing so on her phone.  SDF ¶ 11; Ex. B.  No evidence suggests she

5    did not have access to the video when she filed her original complaint.  SDF ¶ 10.

6    The defendants contend the only proper inference from the existence of the video is that

7    Porter was not "genuinely ignorant" of the officers' identities under California law, which would

8    mean the second amended complaint does not relate back and was untimely.  MSJ at 5.  In *Butler*

9    *v. National Community Renaissance of California*, the Ninth Circuit interpreted the relevant

10   California law.  766 F.3d at 1191.  It held the plaintiff's claims did not relate back under section

11   474 because she was not "genuinely ignorant" of the defendants' identities when she filed her

12   original complaint.  *Id*. at 1202.  She had described her claims against them in prior legal

13   disputes.  *See id.*  In reaching this conclusion, the Ninth Circuit relied on the California Court of

14   Appeal's opinion in *Woo v. Superior Court*.  *Id.* (citing 75 Cal.App.4th at 169).  In *Woo*, the court

15   held that "if the plaintiff knows the defendant's identity and then forgets it at the time the

16   complaint is filed, to use the section 474 relation-back doctrine . . . the plaintiff must have at least

17   reviewed readily available information likely to refresh . . . her memory."  75 Cal. App. 4th

18   at 180.  If a plaintiff could have identified the appropriate defendant "from the readily available

19   information, then section 474 is unavailable."  *Id.*

20   Although the Ninth Circuit did not acknowledge it, *Woo* created a split among California

21   appellate courts.  *See White v. City of Los Angeles*, No. 19-243, 2020 WL 9893054, at *2 (C.D.

22   Cal. July 24, 2020) (discussing the two approaches California courts take in applying section

23   474).  In 1993, a different court of appeal held that a plaintiff in essentially the same position as

24   Porter could rely on section 474.  *See Balon v. Drost*, 20 Cal. App. 4th 483 (1993).  Following a

25   car crash, the parties in *Balon* had exchanged their names and other information.  *Id.* at 486.

26   Although the plaintiff, who was represented by counsel, had a piece of paper with defendant's

27   name on it, she "subsequently forgot about the slip of paper and [defendant's] identity" and

28   named the defendant as a Doe in her complaint.  *Id.*  The court permitted her to rely on section

6

474 because her "conduct [ ] demonstrate[d] carelessness, not a willful misuse of section 474." *Id*. at 490.  Under *Balon*'s more forgiving reading of the statute, a plaintiff may rely on section 474 if she forgets a defendant's name or identity or forgets she has information providing this information before filing her original complaint, if the lapse was negligent.

Although the California Supreme Court might eventually resolve the conflict between *Woo* and *Balon* in Porter's favor, this court is bound by the Ninth Circuit's decision in *Butler* to follow *Woo*.  *See Int'l Bus. Machines Corp. v. Bajorek*, 191 F.3d 1033, 1041 (9th Cir. 1999) ("We are not free to read California law without deferring to our own precedent on how to construe it."); *Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir. 1987) ("District courts are, of course, bound by the law of their own circuit . . . .").  Under *Woo* and *Butler*, Porter's operative complaint does not relate back to her original filing.  She knew the officers' names: they identified themselves in a video she recorded, and nothing suggests she did not have that video when she filed her original complaint.  In fact, she alleged in her original complaint that she "got her phone and got the incident on video."  Compl. at 2.  Reviewing the video before filing her original complaint would have refreshed her recollection of the officers' names.  *See Woo*, 75 Cal. App. 4th at 180.  However, this does not necessarily compel the conclusion that Porter's claims against the individual officers are untimely.

"Even a person whose identity was known to the plaintiff when the action was filed may be brought in under section 474 as a 'Doe' defendant."  *Miller v. Thomas*, 121 Cal. App. 3d 440, 444–45 (Ct. App. 1981).  This is the case "if the plaintiff was initially unaware of that person's true relationship to the injuries upon which the action was based . . . or if a change in law has indicated that persons not originally joined might also be held liable."  *Id*.; *Est. of Ronnie Paul Sandoval v. Cnty. of San Diego*, No. 16-1004, 2016 WL 4491598, at *3 (S.D. Cal. Aug. 5, 2016) (same).  Here, although Porter knew officers' names, she did not know each officer's role in her injuries.  A jury might conclude she did not know what each officer did during the alleged attack and arrest.  Or it might find she could not reasonably discern who grabbed her, pulled her, struck her repeatedly, choked her, and dragged her to the ground.  *See* MSJ Opp'n at 4 (citing Porter Decl. ¶¶ 15–16).  The record does not conclusively determine which of the several officers pulled

her up "from the ground with her breasts completely exposed," placed her "in tight fitting handcuffs," or grabbed her exposed breast to put it back into her shirt.  *Id*.  Furthermore, a jury might be persuaded that given the circumstances of the alleged assault and arrest, Porter could not tell which officers acted as bystanders.  And even if she knew the defendants' names, California courts allow relation back "if the plaintiff was initially unaware of [the defendant's] true relationship to the injuries upon which the action was based . . . ."  *Kurz*, 2011 WL 288460, at *7 (citation omitted).

This court ultimately is persuaded by a sister district court's analysis of a similar problem in *Kestler v. City of Santa Rosa*, No. 15-01361, 2016 WL 3091674 (N.D. Cal. June 2, 2016).  In *Kestler*, the original complaint named the "City of Santa Rosa and Officers Kertianis and Farrington, as well as Doe Defendants 1-25" and alleged that "[a]dditional City of Santa Rosa Police Officers arrived [at the scene] and assisted Officer Ferrington [sic] by hog-tying [the plaintiff]."  *Id.* at *1.  The Police Department's "incident report clarifie[d] that Officer Boyd was one of the officers who arrived on the scene" and that while "Officer Farrington was holding Plaintiff face down on the ground, . . . Officer Boyd delivered approximately three flashlight-jab strikes to Plaintiff's mid-section."  *Id*. (citation and internal quotation marks omitted).  The defendants argued section 474 did not apply because plaintiff had included Boyd's name on a list of officers who may have attacked him, which he created before filing his original complaint.  *Id*. at *2.  The district court disagreed, finding that "listing the officers whose names appeared in the incident report as having attacked him—d[id] not establish that [p]laintiff knew the specific facts as to Officer Boyd's involvement."  *Id.*; *see also Bolbol v. City of Daly City*, No. 09-1944, 2011 WL 3156866, at *4 (N.D. Cal. July 26, 2011) ("[I]f the identity of the Doe defendant is known but, at the time of the filing of the complaint the plaintiff did not know facts that would cause a reasonable person to believe that liability is probable, the requirements of section 474 are met.").

Porter's claims and theories are similar to those the court persuasively analyzed in *Kestler*.  With the benefit of reasonable inferences, which this court must draw in Porter's favor at this stage, she knew only that a group of officers was involved when she filed her original complaint.

As her video confirms, there were at least six.  What each did, she did not know.  She amended her complaint to add the officer's names after she and her counsel "reviewed the relevant evidence."  Order on Mot. to Am. (July 20, 2021), ECF No. 18.  The defendants have therefore not established their statute-of-limitations defense "beyond controversy."  *S. Cal. Gas*, 336 F.3d at 888 (citation omitted).  If a jury eventually accepted Porter's interpretation of the evidence about what she knew and when, her claims against the individual officers relate back.  Accordingly, the court denies the motion for summary judgment.

### III.  MOTION TO AMEND

Porter moves to amend her complaint.  She claims she recently received initial disclosures from defendants, which included dash camera footage and the police incident report.  Mot. to Am. at 2.  These materials prompted Porter to add allegations that Officer Hansen tried  "to grab [Porter's] phone from her hand [while she was recording the officers,] and after he made this attempt, he then announced that [Porter] was under arrest."  Proposed Third Am. Compl. ¶ 15, Mot. to Am. Ex. 1, ECF No. 33-1.  It was after Porter refused to hand over her phone that "all of the named Defendant officers on the scene" allegedly attacked her "with no warning."  *Id.*  Based on her review of these new materials, Porter says she needs to correct "certain facts" in the complaint and to add a First Amendment retaliation claim.  *Id.*  The court has already scheduled this case, *see* Rule 16 Bench Order, ECF No. 29; thus, to prevail Porter must meet the standards for amendment under Federal Rules of Civil Procedure 16 and 15.

Under Rule 16(b)(4), dates in a scheduling order may be modified only for "good cause."  *See Johnson v. Mammoth Recreations, Inc.*, 10 975 F.2d 604, 608 (9th Cir. 1992).  The primary factor courts consider in making a good cause determination is whether the moving party acted diligently.  *Id* at 609.  To show its diligence, the moving party must demonstrate:

> (1) that she was diligent in assisting the [c]ourt in creating a workable Rule 16 order; (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that she was diligent in seeking amendment of the Rule 16 order, once it became apparent that she could not comply with the order.

1   *Martinez-Sanchez v. Anthony Vineyards, Inc.*, No. 1:19-1404, 2020 WL 7360579, at *3 (E.D. Cal.

2   Dec. 15, 2020).  Although the possibility of prejudice to the opposing party "might supply

3   additional reasons to deny a motion, . . . [i]f [the moving] party was not diligent, the inquiry

4   should end," and the request denied.  *Johnson*, 975 F.2d at 609 (citation omitted).

5          The court finds Porter has acted diligently.  She was diligent in her efforts to help the

6   court create a workable schedule, *see generally* Pl. Status Report, ECF No. 25, and has met the

7   scheduling deadlines up to this point.  Porter did not anticipate any reason to amend her

8   complaint, other than to substitute in the proper names of Doe Defendants, until receiving the

9   defendants' initial disclosures.  *Id.* at 4; Mot. to Am. at 3–4.  Porter acted diligently, in seeking

10  amendment just ten days after receiving the disclosure materials, which Porter's counsel received

11  two weeks after the court set the initial disclosure deadline.  Mot. to Am. at 3–4.  Thus, Porter has

12  shown she was diligent, establishing good cause to modify the schedule under Rule 16.

13         Under Rule 15(a)(2), "[t]he court should "freely give[ ] [leave to amend its pleading]

14  when justice so requires" and the Ninth Circuit has "stressed Rule 15's policy of favoring

15  amendments."  *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).  "In

16  exercising its discretion [regarding granting or denying leave to amend] 'a court must be guided

17  by the underlying purpose of Rule 15 -- to facilitate decision on the merits rather than on the

18  pleadings or technicalities.'"  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)

19  (citation omitted).  "Courts may decline to grant leave to amend only if there is strong evidence of

20  'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

21  deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

22  of allowance of the amendment, [or] futility of amendment, etc.'"  *Sonoma Cnty. Ass'n of Retired*

23  *Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S.

24  178, 182 (1962)).

25         The court finds no reason to deny Porter leave to amend.  Fact discovery is not set to

26  conclude for more than two months, with expert discovery continuing for three months after that.

27  *See* Rule 16 Bench Order.  The court has neither held a pretrial conference, nor set a trial date.

28  Mot. to Am. at 7.  Given the early stages of this case, the court finds no evidence of undue delay

1  or that the defendants will be prejudiced.  There is no indication Porter is acting in bad faith.  The

2  defendants' sole argument is that amendment would be futile because, as their motion for

3  summary judgment argues, Porter's claims are barred by the statute of limitations.  Am. Opp'n

4  at 2.  Specifically, the defendants argue, the addition of the First Amendment claim would be

5  futile "because the statute of limitations has already [expired] and the new claim will not relate

6  back to the filing of the original Complaint."  *Id.* at 1.  In resolving defendants' summary

7  judgment motion, the court has found the current record does not allow it to conclude Porter's

8  operative complaint is untimely as a matter of law.  While the court cannot at this juncture predict

9  the ultimate fate of Porter's new First Amendment claim, it is not prepared to find allowing

10  amendment would be  futile at this time.  *See* Mot. to Am. at 3.  The court grants the motion to

11  amend.

12  **IV.   CONCLUSION**

13      The court **denies the motion for summary judgment (ECF No. 35)**.

14      The court **grants the motion to amend (ECF No. 33).**

15      The Clerk is directed to correct the spelling of Hurardo to Jurado in the case caption.

16      This order resolves ECF Nos. 33 & 35.

17      IT IS SO ORDERED.

18  DATED:  May 6, 2022.

19

CHIEF UNITED STATES DISTRICT JUDGE